John CASHMAN, Robert Stotler, as next friend of Meagan Stotler, a minor, James Mulka, individually, and as next friend of James Walter Mulka, Jr. and Tina Mulka, minors, Nathan Yorke, as trustee of the Bankruptcy Estate of Karsten "Cash" Mahlmann, Robert Bartosch and Susan Bartosch, Antonio Cabezas, Amable Rosario, Jamie Acosta and John Herman, Plaintiffs,

v.

COOPERS & LYBRAND, Defendant.

No. 93–C–1284.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 27, 1995.

Richard S. Reizen, James X. Bormes, Kubasiak, Cremieux, Fylstra & Reizen, P.C., Edward T. Joyce, Arthur W. Aufmann, Edward T. Joyce & Associates, P.C., Chicago, IL, for plaintiffs Joan Cashman, Vincent Ciaglia, James W. Mulka, Nathan Yorke, Robert Bartosch, Susan Bartosch, John Horne, Deborah Horne, Antonio Cabezas, Jaime Acosta, John Herman.

Richard S. Reizen, James X. Bormes, Eric Kevin Wein, Kubasiak, Cremieux, Fylstra & Reizen, P.C., Edward T. Joyce, Arthur W. Aufmann, Edward T. Joyce & Associates, P.C., Chicago, IL, for plaintiff Robert Stotler, individually nfr Meagan Stotler.

Richard S. Reizen, Kubasiak, Cremieux, Fylstra & Reizen, P.C., Edward T. Joyce, Arthur W. Aufmann, Edward T. Joyce & Associates, P.C., for plaintiff Amable Rosario.

George A. Davidson, William R. Maguire, Hughes, Hubbard & Reed, New York City, for defendant Coopers & Lybrand.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case involves allegations of securities fraud brought under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77(k)(Count I); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (Count II). State law claims alleging common law fraud are also pled under principles of pendant jurisdiction. De-

fendant, Coopers & Lybrand ("Coopers"), has filed a Motion to Dismiss the Third Amended Complaint (# 33–1) pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, Plaintiffs have filed a Motion to Strike portions of Coopers' Rule 12(b)(6) Motion (# 37–1). For the reasons given below, Coopers' Motion to Dismiss is denied in part and granted in part. Plaintiffs' Motion to Strike is moot.

## BACKGROUND

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Ass'n, Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). All well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). In this case, Rule 9 of the Federal Rules of Civil Procedure requires the underlying facts of the lawsuit to be set out with particularity. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). In short, the only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Plaintiffs' well-pleaded allegations, which the Court takes as true for purposes of this Motion, are as follows.

## I. *Introduction*

Plaintiffs are currently shareholders and debenture holders of Stotler Group, Inc.

("SGI"), an Illinois corporation. Defendant Coopers & Lybrand is an independent public accountant and auditor for SGI and SGI's subsidiaries and affiliates. Coopers also acts as an advisor to SGI (Cmplt. ¶ 1).

In August of 1988, Plaintiffs were partners and investors in a commodities futures business owned by the Stotler & Co. Partnership (the "Stotler Partnership").[1] (Cmplt. ¶ 2). The Stotler Partnership was founded by Kenneth Stotler and other members of the Stotler family. (Cmplt. ¶ 18). The Stotler family was actively engaged in the grain merchandising business for over seventy years. (*Id.*). During the 1970s, the Stotler Partnership restructured its operations to concentrate on futures commission brokerage activities (i.e., the commodities business). (Cmplt. ¶ 19). Coopers had been the trusted advisor, independent public accountant and auditor for the Stotler Partnership since the early 1980s. (Cmplt. ¶ 20).

Throughout the 1980s, the Stotler partners saw their commodities futures business grow at a substantial rate and became highly profitable. (*Id.*). As a result of this success, the business became more and more complex, and the partners' personal assets became tied up by the business' capital needs. (*Id.*). Although the partners were experts in commodities trading, they were unsophisticated in the areas of complex accounting matters, regulatory net capital calculations and the management of customer accounts. (¶ 33a). Consequently, the partners became more and more dependent on Coopers for advice on how to manage their business. (¶ 20). By 1987–88, Coopers was playing an extremely influential role in guiding the Stotler Partnerships' business affairs. (*Id.*).

## II. *The Incorporation of SGI*

In 1987, the Stotler Partnership decided that it wanted to limit the risk of being general partners in the commodities busi-

---

1. Plaintiffs' interests in the commodities business fell into two categories: (a) persons who were already owners/partners of the Stotler Partnership at the time SGI went public and who thereby became owners/shareholders after the transaction (the "Partnership"); and (b) persons who had no ownership interest prior to the transaction but who became investors/shareholders (or bond holders when the business went public (the "investors"). Plaintiffs Robert Stotler ("Stotler"), James Mulka ("Mulka") and Nathan Yorke (as trustee for the Bankruptcy Estate of Karsten "Cash" Mahlmann (the "Mahlmann Estate") are currently partners in the Partnership. All other Plaintiffs are the investors.

ness, withdraw some of their capital from the Partnership, and secure their regulatory capital needs for the foreseeable future. (Cmplt. ¶ 21). The members of the Partnership then consulted with Coopers about how to accomplish these goals, and Coopers provided the following advice. (*Id.*).

First, Coopers advised the members of the Stotler Partnership to transfer substantially all of the Partnership's commodities business assets and liabilities to a newly formed nonpublic corporation, Stotler & Co., Inc. ("SGI"), and to make this transfer of assets in exchange for approximately 80% of the stock of a newly formed public corporation. This transfer is known to the parties as "the exchange."[2] (Cmplt. ¶ 22). Pursuant to the exchange, the Partnership was to receive SGI stock for transfer into the partners' voting trust for the benefit of the partners and, after the expiration of the voting trust (which expired by its' own terms on August 21, 1990), transfer of the stock to the individual partners. The purpose of the exchange was to convert the partners/owners of the business (with unlimited risk) into shareholders/owners of the business (with limited risk). (Cmplt. ¶ 22).

Second, Coopers advised the members of the Partnership to sell additional shares of SGI stock and debentures to the public in an initial public offering ("IPO"), simultaneously with the exchange. (Cmplt. ¶ 23). One purpose of the IPO was to secure a new source of regulatory capital so that SGI and its subsidiaries would have sufficient regulatory capital for the foreseeable future. (Cmplt. ¶ 23). The combination of the exchange and the IPO is known to the Plaintiffs as the "Transaction."

Coopers represented to the Partnership that this proposed Transaction would achieve the following results: (1) the transfer of the business assets and liabilities to SGI would result in SGI having a net book value of $6 million ("6M") on a pooling of interest basis

before the IPO; and (2) the net proceeds from the IPO and SGI's internally generated funds would be sufficient to meet SGI's regulatory capital needs for the foreseeable future. (Cmplt. ¶ 24). Because the Transaction involved complex and sophisticated issues, the Stotler Partnership relied on Coopers' expertise and authorized Coopers to go forward with structuring the Transaction. (Cmplt. ¶ 24).

Based on Coopers' advice, SGI was incorporated on September 9, 1987. (Cmplt. ¶ 26). As a result of this Transaction, the Stotler Partnership received an 80% majority interest in SGI and the remaining interest was sold in an IPO on August 2, 1988. (Cmplt. ¶ 2). At the time the business went public, it was worth approximately $25,000,000 ("$25M"). (Cmplt. ¶ 2). Within two years of the Transaction, the business was bankrupt. (Cmplt. ¶ 2).

### III. *Coopers' Role In The Transaction*

Coopers structured and played a central role in each aspect of the Transaction to ensure that SGI was formed to acquire the stock of Stotler & Company, an Illinois Corporation (the "Corporation"). (Cmplt. ¶ 27). Coopers was also retained for the purpose of ensuring that the Partnership transferred to SGI assets and liabilities with a net book value of $6M. (Cmplt. ¶ 28).

Part of Coopers' role was to assist in the preparation of an agreement (the "Exchange Agreement") between the Partnership and SGI regarding the transfer of assets. The Exchange Agreement structured by Coopers contained the conditions Coopers recommended, including the requirement that the assets and liabilities transferred to SGI would have a net book value of $6M. (Cmplt. ¶ 28). Coopers also structured the Transaction in such a way that the shareholders of Stotler Management Corporation ("SMC")[3] and Stotler Funds Inc. ("SFI")[4] (which consisted largely of the partners of the Partner-

---

**2.** Prior to the exchange, the SGI Partnership owned 100% of Stotler & Co. Partnership, the original commodities future business.

**3.** SMC was in the business of providing advisory services and managing account programs for

commodity funds and individual customers throughout the country.

**4.** SFI was a registered commodity pool operator and acted as a general partner to several limited partnership commodity pools.

ship) would exchange all of their outstanding shares in SMC and SFI for shares of SGI common stock. (Cmplt. ¶ 22). As a result of these transfers, the Corporation, SMC and SFI were to become wholly-owned subsidiaries of SGI. (Cmplt. ¶ 27).

Coopers also structured the Initial Public Offering ("IPO") by advising the drafters of the SGI Prospectus (the "Prospectus")[5]. (Cmplt. ¶ 30). During preparation of the Prospectus, Coopers again represented to the Stotler Partnership that: (1) the transfer of the business assets and liabilities to SGI would result in a net book value of $6M on a pooling of interest basis; and (2) the net proceeds from the IPO and SGI's internally generated funds would be sufficient to meet SGI's net capital needs for the foreseeable future. (Cmplt. ¶ 32).

Relying on these statements, the Partnership incorporated this information into three areas of the Prospectus: (1) at page F–20, the "Notes and Statement of Financial Condition," the Partnership stated that, "the Partnership will transfer net assets with a value equal to $6M ... to SGI ..."; (2) at page 4, the Prospectus provided summary financial data regarding pro forma net income "[a]djusted to reflect, as of January 1, 1987, the transfer from the Partnership of net assets ... equal to $6M and net assets per share based on unaudited pro forma balances as of March 31, 1988; and (3) at page 8, under the heading "DILUTION," the Prospectus listed a number of net tangible asset values per share which could only be correct if the $6M transfer was effective. (Cmplt. ¶ 35).

These statements, which ultimately proved to be misstatements, were made by the Partnership in reliance upon Coopers & Lybrand's expertise, as indicated in the "expertising" section of the Prospectus. (Cmplt. ¶ 35). At pages 41 and 42 of the Prospectus, under the heading "Experts," the Partnership stated:

> The statement of financial condition of Stotler Group, Inc. as of March 31, 1988, the statements of financial condition of

Stotler & Co. (a Partnership) as of December 31, 1986 and 1987, and the statement of income, changes in the Partnership capital and changes in the financial position for each of the five years in the period ending December 31, 1987, and financial statement schedules, included in the Prospectus and in the Registration Statement, have been included therein in reliance on the reports of Coopers & Lybrand, independent certified public accountants, given on the authority of that firm as experts in accounting and auditing.

This section of the Prospectus is referred to by the Plaintiffs as the "expertising section."

Plaintiffs now claim that Coopers "expertised" the misstatements incorporated into the Prospectus. Plaintiffs also claim that, in reliance on the accuracy of Coopers' statements, the Partnership "innocently repeat[ed] Coopers' misrepresentations in the Prospectus." (Cmplt. ¶¶ 32–37). Plaintiffs then argue that Coopers (rather than Plaintiffs) should be held liable for the inclusion of these misrepresentations in the Prospectus, because: (1) Coopers knew that the Partnership was "unsophisticated in complex accounting matters such as making the exchange, making regulatory capital calculations and preparing the Closing Schedule," (Cmplt. ¶ 33b); (2) "Coopers knew that, due to this unsophistication, the Partnership had hired Coopers to monitor the transaction and the Closing Schedule during the following 90 day period" (Cmplt. ¶ 33b); and (3) "Coopers knew that the Partnership's computer based accounting system was incapable of making mid-month computations for a mid-month transaction date." (Cmplt. ¶ 33(c)). Plaintiffs also claim that Coopers knew that its' statements would be reflected in the Prospectus and would induce the partners and the investors to execute the exchange. *Id.*

Coopers' representations to Plaintiffs proved to be inaccurate when: (1) the exchange did not result in the transfer to SGI of business assets and liabilities with a net book value of $6M on a pooling of interest basis; and (2) the net proceeds from the IPO

---

5. The Prospectus is attached to the Third Amended Complaint and is therefore part of the pleadings. Fed.R.Civ.P. 10(c).

and SGI's internally generated funds were not sufficient to meet SGI's net capital needs. (Cmplt. ¶ 40).

Consequently, the following events occurred. In July of 1990, various regulatory agencies which controlled the ability of SGI and its subsidiaries to stay in business concluded that SGI's subsidiaries had a significant net regulatory capital deficit, and for all practical purposes closed down SGI and its subsidiaries. (Cmplt. ¶ 41). As a result of these problems, SGI filed a Chapter 7 bankruptcy petition on August 22, 1990. (Cmplt. ¶ 42). Additionally, in May of 1992, the Securities and Exchange Commission filed a civil action against the Partnership alleging that the Partnership had not transferred business assets and liabilities with a net book value of $6M in August of 1988 (Cmplt. ¶ 43). The partners claim that the SEC's civil suit was the Partnerships' "first notice that the $6 million transfer had been ineffective." (Cmplt. ¶ 43). Plaintiffs then assert that, from August of 1988 to May of 1992, Coopers "fraudulently concealed the ineffectiveness of the $6M transfer from the Partnership, the partners and the investors." This alleged fraudulent concealment was executed by: (1) submitting draft "comfort" letters to the Partnership and its' attorneys regarding the propriety of the Closing Schedule (Cmplt. ¶ 44a); (2) preparing and filing the Partnership's tax returns for 1988 and 1989, which indicated that the $6M transfer had been

effective (Cmplt. ¶ 44b); and (3) auditing and expressing unqualified opinions on the financial statements for SGI and its subsidiaries for the years ending December 31, 1988, and December 31, 1989, which also indicated that the $6M transfer had been effective. (Cmplt. ¶ 44c).

### A. Count I: Section 10(b) and Rule 10b–5

In Count I, Plaintiffs claim that the statements Coopers allegedly made violated § 10(b) of the Securities Exchange Act ("SEA")[6] and Rule 10(b)(5).[7] In order to state a claim under Rule 10b–5 and § 10(b) of the SEA, a plaintiff must demonstrate that: (1) the defendant made an untrue statement of a material fact or omitted a fact that rendered a statement made by the defendant misleading; (2) in connection with a securities transaction; (3) with the intent to mislead; and (4) the misrepresentation or omission caused plaintiff's loss. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989). An omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988).[8]

---

**6.** Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange—
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

**7.** Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (1992).

**8.** The question of the materiality of an omission is most appropriately left for the trier of fact, for it depends on an assessment of the inferences that might reasonably be drawn from the facts and the significance that might be ascribed to these facts and inferences by a reasonable investor. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976).

"[A]n accountant can be held primarily liable under [Rule 10b–5] for material misstatements or omissions . . . made in connection with the sale of a security." *Roberts & Matthews, Ltd. v. Lange,* 1989 WL 153006 at * 1 (N.D.Ill. Nov. 13, 1989). Regardless of whether the plaintiff is challenging a misstatement, an omission, or a prediction, the plaintiff also must establish that the defendant acted with *scienter.*[9] *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1045 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 and *cert. denied, Meers v. Sunstrand Corp.,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). In this Circuit, that means that the plaintiff must establish that the defendant acted at least recklessly. *Renovitch v. Kaufman,* 905 F.2d 1040, 1046 (7th Cir.1990) (citations omitted). *See also Cortec Indus. Inc. v. Sum Holding L.P.,* 839 F.Supp. 1021, 1025 (S.D.N.Y.1993)[10] (an accountant's recklessness is sufficient to give rise to primary liability); *Ades v. Deloitte & Touche,* 799 F.Supp. 1493, 1500–01 (S.D.N.Y. 1992) (applying "reckless disregard" standard).

In this Circuit, primary liability under § 10(b) also requires an accountant's alleged misstatement to be certified, audited, prepared or reported. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 626–27 (7th Cir.1990). *Cf. Roberts,* 1989 WL 153006, at * 1 ("an audit is not a prerequisite to liability") (citing *Gardner v. Surnamer,* 599 F.Supp. 477, 481 (E.D.Pa.1984), and *Zoelsch v. Arthur Andersen & Co.,* 824 F.2d 27, 34–35 (D.C.Cir.1987)). Preparation of the allegedly misstated information requires "central involvement" by the accountants. For instance, in *Barker v. Lee County Bank,* 1985 WL 2529 (N.D.Ill. Sept.

13, 1985), *aff'd,* 797 F.2d 490 (7th Cir.1986), the court dismissed an action brought by investors against an accounting firm under § 10(b) because the accounting firm "neither prepared, signed, nor certified in any way the only prospectus materials that plaintiffs . . . sought to link to [the accounting firm] . . . ." In reaching this conclusion, the court focused on whether there was: (1) "central involvement" by the accountants in the preparation of prospectuses or other promotional material; or (2) "substantial contribution" by the accountant to the promotional material issued to the seller. 1985 WL 2529 at * 11–13. *See also Roberts,* 1989 WL 153006, at * 1 (balance sheet attached to sales documents); *Cortec,* 839 F.Supp. at 1024 (opinion on financial statements and comfort letter); *Ades,* 799 F.Supp. at 1495 (review report on financial statements).[11]

Plaintiffs have alleged with sufficient particularity that Coopers played a central role in the drafting and formation of the alleged misstatements which the Stotler Partnership incorporated into its Prospectus.

1. Coopers structured the Transaction by *counseling* and *assisting* the drafting and *preparation* of the SGI Prospectus. (Cmplt. ¶ 30).

2. During its *substantial participation* in the preparation of the Prospectus, Coopers *recklessly* misrepresented to the partners, the Partnership and SGI that two particular results would follow from the "taking public" Transaction—a net $6,000,000 transfer and a sufficient source of net regulatory capital. (Cmplt. ¶¶ 32, 33).

9. In the Seventh Circuit, the same degree of *scienter* is required for both primary liability and liability based on a cause of action for aiding and abetting. *Schlifke,* 866 F.2d 935, 946–47 (7th Cir.1989).

10. This opinion was withdrawn in part not relevant here. *See* 858 F.Supp. 34 (S.D.N.Y.1994).

11. Plaintiffs have cited two cases from the Ninth Circuit on this point: *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1312 (9th Cir.1982) ("an accountant may be liable for direct violation of the Rule [10b–5] if its participation in the misrepresentation is direct and if it knows or is reckless in not knowing that the facts reported in the Prospectus

materially misrepresents the condition of the issuer."); *In re Worlds of Wonder Securities Litigation,* 721 F.Supp. 1140, 1146 (N.D.Cal.1989) ("accountants may be primarily liable under Rule 10b–5 for alleged misstatements in prospectuses, registration statements, or other reports which were prepared in part by them."). Although these cases were decided on the grounds of "aiding and abetting" liability, the aiding and abetting theory requires a finding of primary liability in this Circuit. *See DiLeo,* 901 F.2d at 627. Thus, the articulation of the standard for primary liability in these cases, although dicta, is relevant for purposes of this Court's analysis.

3. Coopers' *substantial participation* consisted of: (1) *issuing reports/statements of financial condition* and *financial statement schedules* for the Stotler Partnership for each of the five years in the period ending December 31, 1987, (prior to the incorporation of SGI) and a Statement of Financial Condition of SGI as of March, 31, 1988; and (2) allowing the Stotler Partnership to rely on these reports as a basis for its' statement that the Partnership would be able to transfer assets equal to $6,000,000 to SGI. (Cmplt. ¶ 35–36).

4. Coopers *knew* that its' representations to the Partnership would be reflected as statements in the Prospectus, and that these representations would induce the partners' and investors' investment decisions. (Cmplt. ¶ 34).

5. The Stotler Partnership incorporated Coopers' misstatements into the Prospectus. (Cmplt. ¶ 33–35).

These allegations, taken as true for purposes of this Motion, support an inference that Coopers played a central role in the issuance of the alleged misstatements in the Prospectus. Further, the comfort letters, tax returns and audits prepared by Coopers after issuance of the Prospectus indicated that the $6M transfer had been effective. (Cmplt. ¶ 44a–c). Since the $6M transfer was not effective, this allegation raises the inference that Coopers knew that the $6M transfer was not effective, but concealed this information. Moreover, Plaintiffs have sufficiently pled every other element necessary to impose liability for a primary violation of § 10(b) and Rule 10b–5, by alleging *scienter* (recklessness) (¶¶ 32 and 48), materiality (¶¶ 34 and 48), reliance (¶¶ 38, 39, and 49) and damages (¶¶ 2 and 50).

Although we could end the analysis here, further explanation of the Court's analysis is warranted. First, language in *DiLeo* indicates that Coopers may be held primarily liable for certifying or issuing reports on the Stotler Partnership's financial statements if those reports contain materially misleading statements or omissions which the Partnership relied upon and incorporated into its Prospectus. *DiLeo,* 901 F.2d at 627.

the securities laws forbid material omissions that render misleading what has been stated. When an accountant certifies that a firm's financial statements "present fairly" its financial position (the standard language of the profession), it is certifying the absence of materially misleading omissions, a source of primary liability. If it acts with the necessary mental state, the case for direct liability is complete.

See *DiLeo,* 901 F.2d at 627.

In this case, Plaintiffs' allege that Coopers did not omit material facts, but recklessly misstated the facts reported in the financial statements, thereby misleading the Stotler Partners and other investors with respect to "material" information. Under § 10b, a misstatement is as actionable as an omission. Thus, Coopers may be held primarily liable for any misstatements in the Prospectus which can be attributed to statements made in the financial statements or other certified reports issued to the Partnership. Plaintiffs ultimately will have to offer evidence to support this link.

Second, the Plaintiffs' theory is that Coopers (rather than the Partnership) is directly liable for violations of the securities laws, because it certified fraudulent financial statements that were incorporated into the Prospectus. In addition, Plaintiffs' claim that Coopers' played a central role in structuring the statements contained in the Prospectus. Thus, according to Plaintiffs, although the Stotler Partners actually made the misstatements to the public (spoke the words), these misstatements should be attributed to Coopers, who masterminded the entire scheme (pulled the strings).

This "puppeteer" theory finds some support in *DiLeo.* In *DiLeo,* a similar theory was raised by the plaintiffs, but rejected by the Seventh Circuit, because the plaintiffs had not satisfied the particularity requirements of Federal Rule of Civil Procedure 9(b). In particular, the plaintiffs in *DiLeo* had not alleged facts showing the link between the accounting firm's allegedly fraudulent omissions in the financial statements (regarding Continental Bank's inability to collect a substantial amount of the receivables reported in the financial statements)

and its' alleged knowledge of this problem. In other words, the Plaintiffs had not alleged facts showing how the accounting firm knew that the receivables reported could not be collected by the bank.

In this case, Plaintiffs have alleged not only Coopers' knowledge that the statements regarding the Partnership's ability to transfer $6M were fraudulent, but also that Coopers was the only entity with the expertise necessary to estimate and represent that the $6M figure was accurate. According to Plaintiffs, Coopers was also the only entity capable of structuring the Transaction on behalf of the Partnership. Thus, Plaintiffs claim that the alleged fraud in this case—the public misstatements regarding the transfer of $6M in assets to SGI and SGIs ability to meets its capital expenditures after incorporation—was possible only because Coopers represented that $6M would be transferred and structured a Transaction to transfer those assets.

Whether Coopers actually masterminded the scheme plaintiffs allege (and whether plaintiffs have hard evidence to support it) is not the issue at this stage of the litigation. At this stage, the Court must take plaintiffs' allegations as true and determine whether the law supports a cause of action based on the facts alleged and all reasonable inferences that can be drawn from those facts. The Court believes that *DiLeo* contemplates a situation, similar to the one in this case, where an accounting firm could be held primarily liable for allegedly making or failing to make material misrepresentations in financial statements which led to a fraud on

the market. When the complaint alleges facts with the requisite degree of particularity required by Rule 9(b), the complaint must stand.

The Court believes that the Plaintiffs in this case have satisfied Rule 9(b) and have alleged the requisite elements necessary to support a § 10(b) and Rule 10b–5 claim. Therefore, Coopers' Motion to Dismiss Count I is denied.

## B. *Count II: Section 11(a)(4)*

In Count II, Plaintiffs allege that Coopers violated § 11(a)(4) of the SEA.[12] Section 11(a)(4) prohibits an accountant from making false and misleading statements in the portions of a prospectus or registration statement which the accountant has "prepared or certified." In other words, an accountant cannot make misleading statements in the portions of a prospectus which it has expertised. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n. 11, 103 S.Ct. 683, 687 n. 11, 74 L.Ed.2d 548 (1983). *See also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir.1986) (presumptive liability under § 11 for "all who sign the prospectus or are named as preparing it"); *Davis v. Coopers & Lybrand*, 787 F.Supp. 787, 802–803 (N.D.Ill.1992). Section 11,

> was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering. If a plaintiff purchased a security issued pursuant to a registration statement, [the plaintiff] need

---

**12.** Section 11(a)(4) provides:

> (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue ——
>
> \* \* \* \* \* \*
>
> (4) every accountant ... whose profession gives authority to a statement made by him, who has with his consent been named as

> having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.
>
> 15 U.S.C. 77k (1994).

Although this statute purports to relate only to "registration statements," case law interpreting this provision generally recognizes a cause of action against accountants for misleading statements contained in prospectuses. *See Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir.1986); *Endo v. Albertine*, 863 F.Supp. 708, 731 (N.D.Ill.1994).

only show a material misstatement or omission to establish his *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements, *Huddleston,* 459 U.S. at 381 [103 S.Ct. at 686], unless the accountant is able to establish that it conducted a reasonable investigation regarding the accuracy of the Prospectus ("due diligence defense"). *Endo v. Albertine,* 863 F.Supp. 708, 731 (N.D.Ill.1994) (citing *Ackerman v. Schwartz,* 947 F.2d 841, 845 (7th Cir. 1991)).

In addition, § 11 differs from § 10(b) in that it does not require proof of *scienter. See Barker,* 797 F.2d at 495 (section 11 establishes liability without fault); *Davis,* 787 F.Supp. at 802 (section 11 lacks § 10(b)'s scienter requirement).

■ Plaintiffs claim that Coopers was identified as an "Expert" with respect to several portions of the Prospectus: (1) Coopers' two misrepresentations (i.e., the feasibility of a $6M transfer of assets from Stotler Partnership to SGI and the sufficiency of SGI's internally generated funds plus net proceeds from the IPO to meet SGIs future capital needs (Cmplt. ¶ 32); (2) the connection between those two misrepresentations and the four places in the Prospectus where they appear (Cmplt. ¶ 34, 35, 56); and (3) the "expertising section," which indicated that the statements made in the Prospectus regarding the Partnership's financial condition (i.e., the feasibility of a $6M transfer mentioned above) were based upon reports issued by Coopers & Lybrand. (Cmplt. ¶ 37).

Coopers claims that it did not make the alleged misstatements, nor did it prepare or certify the Prospectus containing the misstatements. Therefore, Coopers claims that it cannot be held liable under § 11(a)(4). Coopers' argument is unavailing.

As this Court indicated with respect to Count I, Plaintiffs have alleged sufficient facts to raise an inference that Coopers played a central role in the preparation of the Prospectus, which contained the allegedly fraudulent statements. We need not repeat that analysis here. The same allegations supporting the § 10(b) claim suffice to support the § 11(a)(4) claim: Coopers is an accounting firm alleged to have prepared reports in connection with the preparation of a Prospectus for the sale of securities. These reports allegedly contained materially misleading statements which Plaintiffs incorporated into their Prospectus. These statements later proved to be false, and Plaintiffs seek to hold Coopers liable under § 11(a)(4). Plaintiffs' allegations regarding Coopers' expertising role and its' participation in preparing the financial statements from which the material misstatements originated is sufficient to survive Coopers' Motion to Dismiss. Furthermore, under § 11, the recklessness standard does not apply, making the § 11 claim easier to allege and prove. *See Davis,* 787 F.Supp. at 802.

## C. *Defenses Directed Jointly At Mulka & Mahlmann*

### 1. *Derivative Claims*

■ Coopers seeks dismissal against James Mulka, individually,[13] and Nathan York, as trustee of the Bankruptcy Estate of Karsten "Cash" Mahlmann, on grounds that the individual partners of the Stotler Partnership do not have a cause of action against Coopers separate from the Partnership. Defendants then assert that Plaintiffs' allegation that the Partnership transferred its' SGI stock to the individual partners vis-a-vis a voting trust (Cmplt. ¶ 22) "makes no difference." (Coopers' Mem. In Support at 4). According to Coopers, "[a] cause of action belonging to a purchaser of stock does not attach to the security itself and pass to the next purchaser." *Soderberg v. Gens,* 652 F.Supp. 560, 563–64 (N.D.Ill.1987) (citing cases). In *Soderberg,* the court noted one exception to this general rule (in dicta): where trustees purchase stock directly for the trust on behalf of a shareholder, a court may "look through the apparent barrier presented by the trust and grant [the sharehold-

---

**13.** It is not clear whether Coopers seeks dismissal against Mulka as next friend of James Jr. and Tina Mulka, minors, or whether the dismissal sought relates only to Mr. Mulka in his individual capacity. The Court will assume that the dismissal sought is against Mulka in his individual capacity.

er] standing as one who experienced the direct impact of the [securities fraud] transaction." *Soderberg*, 652 F.Supp. at 563. According to Coopers, since the Stotler Partnership (not the individual partners) purchased the SGI stock, any cause of action arising out of that purchase remains with the Partnership—even if the Partnership subsequently transferred its' interests to the individual partners, as alleged by Plaintiffs.

Plaintiffs claim that Coopers designed the Transaction so that the Stotler Partnership would purchase SGI stock directly for the voting trust on behalf of the individual partners—for eventual transfer to them. (Cmplt. ¶ 22). This Transaction was designed so that the members of the Stotler Partnership would become shareholders of SGI with individual rights and limited liability. (Cmplt. ¶ 3, 5, 6, 12, 22). Plaintiffs therefore contend that Mulka and Mahlmann have "direct claims which are not derivative of the Partnership." (Pls' Resp. at 12). *See Atwood Grain & Supply Co. v. Growmark, Inc.*, 712 F.Supp. 1360, 1364 (N.D.Ill.1989) ("[s]hareholders may bring direct actions, both as individuals and as a class, for injuries done to them in their individual capacities as corporate fiduciaries.").

The facts of this case fall into the "Soderberg exception." The Stotler Partnership transferred its' interests to SGI, purchased 80% of SGI's stock, and placed this stock into a voting trust for the benefit of and transfer to the individual partners. (Cmplt. ¶ 22). Coopers' Motion to dismiss on this ground will therefore be denied.

### 2. Benefits To Partnership

■ Loss is an essential element of a securities claim. *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1557 (7th Cir.1990). Coopers argues that Mulka and Mahlmann benefitted from the Stotler Partnership's failure to transfer $6M of its net assets to SGI, therefore "paying too little for the stock the Partnership acquired." (Coopers' Mem. In Support at 12). In other words, Coopers is arguing that Mulka and Mahlmann derived a benefit from the value of the SGI stock that they did not completely pay for. This argument is equally unavailing.

As Plaintiffs point out, any benefit Mulka and Mahlmann may have gained by owning stock for which they did not pay was subsumed by the loss of their business, worth $25M. This loss resulted from the same failure to transfer the $6M. Therefore, Plaintiffs' have sufficiently alleged loss for purposes of pleading damages.

### D. Statutes of Limitation

■ A § 10(b) claim must be commenced within one year from discovery of the facts constituting the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991). Similarly, a § 11 claim must be commenced within one year from discovery of the untrue statement or omission. 15 U.S.C. § 77m.

### 1. Mahlmann

■ Coopers argues that Mahlmann's securities claims are time-barred because he was put on notice of the claims alleged in the Complaint in July of 1990 when various regulatory agencies "concluded that [Stotler Group's] subsidiaries had a significant net regulatory capital deficit...." (Cmplt. ¶ 41–42). Alternatively, Coopers argues that Mahlmann was put on notice of his claims at the latest by August 3, 1990, when another securities holder sued Coopers and others (including Mahlmann & Robert Stotler) in *Elson v. Coopers & Lybrand*, 90–C–4497 (N.D.Ill.).[14] *See* Coopers' Reply Mem., Ex.

---

**14.** The Court finds that the filing of this action was sufficient to put Plaintiffs on inquiry notice of the claims alleged in the present case. Plaintiffs assert, however, that the *Elson/Guthrie* action was filed on August 24, 1990, rather than August 3, 1990, as Coopers contends. Plaintiffs have not submitted a docket sheet with the filing date as part of their Third Amended Complaint. Coopers, however, has submitted a copy of the docket sheet from the *Elson/Guthrie* action indicating a file date of August 3, 1990. Although the Court generally may not consider matters outside the pleadings for purposes of resolving a motion to dismiss, the Court believes that it may take judicial notice of the fact that the *Elson/Guthrie* action was filed on August 3, 1990, as represented by the District Court's docket sheet, pursuant to Federal Rule of Evidence

A. Either way, Coopers claims that the one year statute of limitations for Mahlmann's § 10(b) and § 11 SEA claims ran before or on August 3, 1991—at least 20 days before Mahlmann filed his bankruptcy petition was filed (i.e., August 23, 1991) and almost seven (7) months before the Complaint in this case was filed (i.e., March 1, 1993). Plaintiffs claim that the statute was tolled by the pendency of the *Elson/Guthrie* class action and Mahlmann's bankruptcy (Cmplt. ¶ 60–61). Coopers correctly points out, however, that the *Elson/Guthrie* class action cannot save the claims of Mahlmann because Mahlmann was not named as a defendant in *Elson.* The bankruptcy petition also does not save Mahlmann's claims since the one year period on the claims expired at the latest on August 3, 1991—20 days prior to the date Mahlmann filed a bankruptcy petition.

### 2. Meagan Stotler

In addition, Meagan Stotler's claim, brought by her father, Robert Stotler, were not tolled during the pendency of the *Elson/Guthrie* class action because the class expressly excluded any immediate family member (daughter) of an *Elson/Guthrie* defendant (i.e., Robert Stotler). Thus, Meagan Stotler's securities fraud claims must be dismissed as untimely: this action was filed on March 1, 1993, and the statute of limitations ran at the latest on August 3, 1991, one year from the date the *Elson/Guthrie* class action was filed.[15]

 Similarly, Robert Stotler's common law fraud claim, brought on behalf of his daughter, Meagan, must be dismissed as untimely. The statute of limitations for a common law fraud claim against accountants is two years. *See* 735 ILCS 5/13–214.2(a) (1993).[16] Even if Meagan Stotler, by her

father, did not discover the claims raised in the present Complaint until the *Elson/Guthrie* action was filed on August 3, 1990, the statute of limitations for common law fraud ran on August 3, 1992, almost seven (7) months before Plaintiffs commenced this action on March 1, 1993. Therefore, Meagan Stotler's common law fraud claim will be dismissed.

### CONCLUSION

This case was filed by three of the Stotler Partners (in various capacities): Robert Stotler (as next friend of Meagan Stotler, his daughter), James Mulka (individually, and as next friend of James Jr. and Tina Mulka), Nathan Yorke (as trustee for the bankruptcy estate of Karsten "Cash" Mahlmann), and several SGI investors. For the reasons given in this opinion, the Court must dismiss the claims of two of the three partners, but may retain jurisdiction over the securities and common law fraud claims alleged by the remaining parties.

Defendant Coopers and Lybrand's **Motion to Dismiss** the Third Amended Complaint is **GRANTED IN PART** and **DENIED IN PART** (# 33–1). The Motion to Dismiss is granted with respect to Plaintiffs Robert Stotler, as next friend of Meagan Stotler, and Nathan Yorke, as trustee for the bankruptcy estate of Karsten Mahlmann, because these plaintiffs' claims are time-barred. Plaintiffs' **Motion to Strike** Portions of Coopers' Motion to Dismiss is **MOOT** (# 37–1).

Accordingly, the Clerk of the Court is directed to **DISMISS Counts I, II and III** *with prejudice* as to Plaintiff, Robert Stotler, as next friend of Meagan Stotler, a minor, and **DISMISS Counts I and II** *with prejudice* as to Plaintiff, Nathan Yorke, in

---

201(b) and (c). This fact is contained in a public record and is not open to dispute. Therefore, converting Coopers' Motion to one for summary judgment and ordering a briefing schedule on this fact alone, based on a technical reading of Rule 12(b)(6), would (in this Court's view) be a poor use of judicial resources and economy.

**15.** Plaintiffs have conceded this point. (Pls' Resp. at 6).

**16.** This statute provides:

Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting act, as amended, or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

735 ILCS 5/13–214.2(a) (footnote omitted).

his capacity as trustee for Karsten Mahlmann.

The remaining plaintiffs in this case with viable claims under Counts I, II and III include: James Mulka, individually and as next friend of James Jr. and Tina Mulka, John Cashman, Robert Bartosch, Susan Bartosch, Antonio Cabezas, Amable Rosario, Jaime Acosta and John Herman. This case will be set for a status hearing on March 3, 1995, at 9:00 a.m., for the express purpose of setting an appropriate discovery and litigation schedule. The parties are directed to confer on these issues and file a proposed schedule with the Court by March 2, 1995.